**P & C INVESTMENT CLUB, an unincorporated association, by Edward Stock and Max Sher, Trustees ad Litem, Plaintiffs,**

v.

**Robert J. BECKER, Brian Sablosky and Dean Witter Reynolds, Inc., Defendants.**

Civ. A. No. 80–0207.

United States District Court, E. D. Pennsylvania.

Aug. 10, 1981.

Sherrie R. Savett, Gary Cantor, Berger & Montague, P.C., Philadelphia, Pa., for plaintiffs.

Joseph Finkelstein, Wolf, Block, Schorr & Solis-Cohen, Philadelphia, Pa., for Becker & Sablosky.

Peter J. Boyer, Jerome R. Richter, Blank, Rome, Comisky & McCauley, Philadelphia, Pa., for Dean Witter.

MEMORANDUM AND ORDER

DITTER, District Judge.

In this action, which presents questions concerning the interaction of federal securi-

ties and commodities laws, P & C Investment Club, an unincorporated association, by Edward Stock and Max Sher, as trustees ad litem, has brought suit against the brokerage firm of Dean Witter Reynolds, Inc., and two of its employees, Robert J. Becker and Brian Sablosky. In short, the complaint alleges that in May, 1978, P & C opened a discretionary trading account with Dean Witter through Becker, the club's investment advisor and stockbroker, and Sablosky, Becker's supervisor. P & C alleges that it was induced to invest its funds in futures contracts in government securities, e. g., United States treasury bills, as a result of fraudulent omissions and material misrepresentations made by Becker and Sablosky while they were employed by Dean Witter. According to the complaint, P & C's investments in interest rate futures eventually became so great that they violated both the club's restriction that no more than one third of its equity capital be placed at risk in any one particular type of investment and Dean Witter's own internal operating rules for commodities accounts. As a result of the substantial rise in short-term interest rates in July, 1979, Dean Witter liquidated P & C's commodities account and the club suffered a loss of over 90 percent of its total funds.

In its complaint, P & C alleges that defendants violated the Securities Exchange Act of 1934 (Securities Act) (Count I), the Commodities Exchange Act, as amended by the Commodities Futures Trading Commission Act (Commodities Act (Count II), the Pennsylvania Securities Act of 1972 (Count III), and various common law principles and standards of care (Counts IV–VI). Presently before me is Dean Witter's motion to dismiss pursuant to Fed.R.Civ.P. 12. Becker and Sablosky have joined in the motion to dismiss to the extent applicable to them. In addition, Dean Witter has filed a supplemental motion to dismiss. For the reasons to follow, defendants' motion to dismiss will be granted in part and denied in part; Dean Witter's supplemental motion will be denied.

Defendants seek dismissal of P & C's complaint on a number of grounds. The first ground advanced is that an interest rate futures contract is not a "security" within the meaning of the Securities Act, and hence is not subject to regulations under that act. Dean Witter cites *McCurnin v. Kohlmeyer & Co.*, 340 F.Supp. 1338 (E.D. La.1972), as support for its view that interest rate futures are not securities. I find this case persuasive.

In *McCurnin*, the plaintiff claimed that a commodities futures contract in cotton was a security because he never intended to buy actual cotton but was merely speculating in bookkeeping entries. Since section 3(a)(10) of the Securities Act, 15 U.S.C. § 78c(a)(10), defines a security as, *inter alia*, an "investment contract," plaintiff argued that suit was proper under the Securities Act. The court rejected plaintiff's argument, noting first that the definition of a security under the Securities Act "does not refer to a commodity future contract, nor contain any term that can be fairly understood to embrace such a contract." *Id.* at 1340.

Second, the court quoted, *id.* at 1341, the oft-cited three-step definition of a security set forth by the Supreme Court in *SEC v. W. J. Howey Co.*, 328 U.S. 293, 301, 66 S.Ct. 1100, 1104, 90 L.Ed. 1244 (1946): "The test is whether the scheme involves an investment of money in a common enterprise with profits to come solely from the efforts of others." The court than applied the *Howey* test and concluded that a commodities future in cotton was not a security:

There is no evidence that a commodity contract is commonly given the character of a security in commerce. The purchaser of such a contract is in no way participating in a "common enterprise" looking for his profits to come "solely from the efforts of others." A commodity future contract is just what its name implies: an undertaking to deliver or take delivery of a specified amount of the commodity at a specified time and place for a specified price.

\*     \*     \*     \*     \*     \*

He is in no way investing his money in a common enterprise, nor is he led to ex-

pect profits solely from the efforts of any third party. The "enterprise" is an individual one. The expectation of profit arises solely from the speculative hope that the market price of the underlying commodity will vary in his favor, permitting purchase or sale at a profit.

*Id.* This same reasoning is equally applicable here.

P & C through Dean Witter, purchased interest rate futures contracts. By this purchase, however, P & C "gained no share in a common enterprise, either between [itself and Dean Witter] or [itself] and anyone else." *Sinva, Inc. v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.*, 253 F.Supp. 359, 366 (S.D.N.Y.1966). Moreover, the profits to be realized through the purchase of interest rate futures by P & C were in no way dependent solely on the efforts of promoters, managers, employees, or any other third parties. Rather, the expectation of profit arose totally out of changes in interest rates over a period of time and not also, as P & C contends on the financial ability of the issuer to repay its debt.

P & C attempts to distinguish the sound reasoning of *McCurnin* by arguing that *McCurnin* involved futures contracts for tangible commodities, while P & C purchased commodity futures in intangibles, *i. e.*, interest rates on treasury bills and other government securities. It insists there is a fundamental difference between the two because the government securities P & C contracted to purchase in the future are themselves statutory securities under section 3(a)(10) of the Securities Act, while commodity futures in tangible items such as sugar, cocoa, or cotton (as in *McCurnin* ) are not. Thus, P & C argues that interest rate futures contracts are basically identical to common stock options which are themselves securities subject to regulation under the Securities Act. I am not persuaded by this argument.

Obviously, there is a difference between a futures contract in interest rates and a futures contract in cotton, just as there is a difference between a futures contract in pork bellies and a futures contract in soy beans. The distinguishing feature in each is the nature of the underlying obligation. However, this difference is wholly immaterial as to whether the transaction is to be considered a security, since the basic character of all futures, be they in government securities or in cotton, is the same.[1] In every futures contract, there is a purchaser who agrees to take delivery and a seller who agrees to supply a specified quantity of a stated commodity at a fixed price on a particular date. Both are speculating that the market value of the underlying commodity at some date in the future will vary in his favor. The expectation of profit entails absolutely no reliance on specific third parties but rather is affected by such factors as inflation, money supply, political events, or acts of God. This is fundamentally different from common stock options which give the purchaser a right to buy a security in the future. First, the holder of the option may or may not choose to exercise it, whereas in a commodities transaction "[u]nless the investor reverses his position timely by selling what he has bought . . ., he must accept actual delivery of the commodity and pay the full purchase price as set by the contract." *McCurnin, supra,* 340 F.Supp. at 1741. Second, unlike a commodities future, the expectation of profit in a stock option involves reliance upon the efforts of promoters, managers, or other specific third parties. Their success or failure is a substantial factor in the up or down swings of price which in turn make stock options profitable or worthless. Thus, P & C's attempt to equate commodities futures in interest rates with common stock options contracts is to no avail. I, therefore, hold that an interest rate futures contract is not a "security" and hence P & C

---

1. Indeed, the Congress has expressly recognized the fundamental similarity between futures contracts in traditional tangible commodities and futures contracts in intangibles such as government securities when, in 1974, it amended the Commodities Act to include in the definition of a commodity "all services, rights, and interests in which contracts for future delivery are presently or in the future dealt in." 7 U.S.C. § 2.

may not assert its claim under the Securities Act in this regard.

The next ground advanced by defendants for dismissal of the complaint is that P & C's discretionary trading account with Dean Witter is likewise not a "security" subject to the strictures of the Securities Act. There is presently a split in opinion on this particular question. · See, e. g., Milnarik v. M–S Commodities, Inc., 457 F.2d 274 (7th Cir.), cert. denied, 409 U.S. 887, 93 S.Ct. 113, 34 L.Ed.2d 144 (1974); SEC v. Continental Commodities Corp., 497 F.2d 516 (5th Cir. 1974). However, in this case, the issue is not yet ripe for decision since factual questions exist as to whether the club's funds were traded "solely" in futures contracts or whether P & C's account also traded in securities. Discovery must proceed on this issue.

Defendants next argue that Count II should be dismissed since there is no private right of action under the Commodities Act. Moreover, they claim that even if such a private right of action does exist, the complaint does not allege sufficient conduct on the part of defendants to impose liability under the Commodities Act. As to the first contention, I note that the Third Circuit has not specifically ruled whether a private right of action exists under the Commodities Act, in view of the 1974 amendments thereto. The various courts of appeals that have considered the question are split in their opinion. However, the Supreme Court has seen fit to grant certiorari on this issue. Leist v. Simplot, 638 F.2d 283 (2d Cir. 1980), cert. granted, 450 U.S. 910, 101 S.Ct. 1346, 67 L.Ed.2d 332 (1981); Curran v. Merrill Lynch, Pierce, Fenner & Smith Inc., 622 F.2d 216 (6th Cir. 1980), cert. granted, —— U.S. ——, 101 S.Ct. 1971, 68 L.Ed.2d 293 (1981). Therefore, I will deny defendants' motion to dismiss at this time without prejudice to their right to renew that motion should a decision on the issue be forthcoming by the Supreme Court during the pendency of this lawsuit. Finally, I note that P & C has alleged sufficient conduct on the part of all defendants to survive a motion to dismiss under the Commodities Act.[2]

■ Dean Witter's supplemental motion to dismiss asserts that Stock and Sher lack the capacity to act as trustees ad litem for P & C in this lawsuit. It states that Stock and Sher cannot fairly and adequately represent the interests of the members of the club because of litigation in a related state court proceeding. That proceeding, brought by several members of the club, charges, inter alia, the members of the executive committee of P & C, including Stock and Sher, with breach of their fiduciary duties in connection with the handling of the club's funds. Dean Witter's challenge to Stock's and Sher's representation of the interests of the members of the club is premature. P & C's complaint alleges that Stock and Sher will fairly and adequately protect the interests of the club and its members. Moreover, the two trustees have submitted affidavits which affirm their roles as proper P & C representatives. Thus, resolution of this issue is not appropriate at this time.

In the alternative, Dean Witter, in its supplemental motion to dismiss, asks me to exercise my discretion to stay this proceeding pending a resolution of the state court action. Without belaboring the point, Dean Witter has not persuaded me that staying this action would be the appropriate course of action to take.

### ORDER

AND NOW, this 10th day of August, 1981, for the reasons expressed in the foregoing memorandum, it is hereby ordered that:

1. Count I is dismissed in part since futures contracts in government securities are not securities as that term is used in the Securities Act.

2. In all other respects defendants' motion to dismiss is denied without prejudice to its being reasserted.

3. Dean Witter's supplemental motion to dismiss is denied.

---

2. Since I have allowed P & C to maintain most of their federal causes of action, I will also deny defendants' motion to dismiss P & C's pendent state law claims.