Ray S. FISHER

v.

DEAN WITTER REYNOLDS, INC.,
et al.

Civ. A. No. 81–2745.

United States District Court,
E. D. Pennsylvania.

Nov. 18, 1981.

Joel R. Glucksman, Newark, N.J., Alan A. Turner, Thomas B. Rutter, Ltd., Philadelphia, Pa., for plaintiff.

Jerome R. Richter, Peter J. Boyer, Blank, Rome, Comisky & McCauley, Philadelphia, Pa., for defendant Dean Witter Reynolds, Inc.

MEMORANDUM

GILES, District Judge.

Pursuant to Fed.R.Civ.Proc. 12, defendant Dean Witter Reynolds, Inc. ("DWR") has moved to dismiss that portion of the complaint of plaintiff Ray S. Fisher which alleges that defendant has violated the Securities Exchange Act of 1934 ("1934 Act"). Defendant argues that since the losses upon which plaintiff's claims are based arose from commodity, rather than security, transactions, no cause of action exists under the federal securities laws.

Plaintiff's factual allegations, which must be treated as correct for purposes of this motion, may be briefly summarized. Sometime prior to June, 1978, defendant Robert J. Becker, an employee of defendant DWR, was retained by plaintiff to serve as his investment advisor and stockbroker. Sometime during June, 1978, Becker recommended that plaintiff purchase a number of interest-rate futures contracts. Relying on Becker's representation that the contracts were safe investments, plaintiff authorized Becker to invest on his behalf in the interest-rate futures market. A sharp rise in interest rates during July and August, 1979, caused plaintiff's investments to become substantially worthless, and his account was liquidated in August, 1979, at a loss in excess of $208,000.

Alleging that his losses were caused by certain material misrepresentations and fraudulent omissions made by Becker, plaintiff brought suit under sections 10(b), 15(c), and 20(a) of the 1934 Act, 15 U.S.C. §§ 78j(b), 78o(c), and 78t(a), and under sections 2(a)(1), 4b, and 4o of the Commodities Futures Trading Commission Act of 1974, ("CFTCA") 7 U.S.C. §§ 4, 6b, and 6o.[1] DWR now seeks to dismiss the securities law claims, contending that since interest rate futures are commodities and not securities, there is no remedy available to plaintiff under the 1934 Act. For the reasons set forth below, defendant's motion to dismiss is denied.

The contracts entered into by plaintiff were agreements to purchase, at a future date, Government Treasury bills and Government National Mortgage Association (GNMA) certificates. The bills and certificates pay interest at a rate fixed at the time of the contract transaction. The value of such a contract increases as market interest rates decline because the fixed interest rate of the government security becomes more favorable in relation to that available in the market.

■ An examination of the relevant statutory provisions as applied to these interest-rate futures reveals that plaintiff may properly seek redress under the 1934 Act. Section 10(b) of the 1934 Act, 15 U.S.C. § 78j(b), provides:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—

. . . .

(b) To use or employ, *in connection with the purchase or sale of any security* registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

(Emphasis added).[2] Section 3(a) of the 1934 Act, 15 U.S.C. § 78c(a), provides in pertinent part:

(13) The terms "buy" and "purchase" each include any contract to buy, purchase, or otherwise acquire.

(14) The terms "sale" and "sell" each include any contract to sell or otherwise dispose of.

■ From this language, it is apparent that the anti-fraud provisions of the 1934 Act apply not only to a direct purchase of a security, but also to contracts to buy securities at a future date. There is no doubt that both Treasury bills and GNMA certificates are indeed securities.[3] Thus, contrary to defendant's contentions, there is a fundamental difference between ordinary commodities futures contracts and interest-rate futures contracts. While the latter may properly be viewed as contracts to purchase

---

1. A decision on defendant's motion to dismiss the CFTCA claims has been continued pending the outcome of *New York Mercantile Exch. v. Leist, cert. granted,* 450 U.S. 910, 101 S.Ct. 1346, 67 L.Ed.2d 332 (1981).

Plaintiff has also alleged various violations of Pennsylvania statutory and common law. These allegations are not relevant to the determination of this motion.

2. Section 15(c), 15 U.S.C. § 78o (c), upon which plaintiff also relies, forbids fraudulent conduct by brokers and dealers in connection with the sale or purchase of securities. Section 20(a), 15 U.S.C. § 78t(a), which is relevant to plaintiff's claim against DWR, provides that one who controls a person liable under any provision of the 1934 Act:

shall also be liable jointly and severally with and to the same extent as such controlled

person to any person to whom such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.

3. Section 3(a)(10), 15 U.S.C. § 78c(a)(10), provides in pertinent part:

The term "security" means any note, stock, treasury stock, bond, debenture, certificate of interest or participation in any profit-sharing agreement or in any oil, gas, or other mineral royalty or lease, any collateral-trust certificate, preorganization certificate or subscription, transferable share, investment contract, voting-trust certificate, certificate of deposit, for a security, or in general, any instrument commonly known as a "security". . . .

securities—assets plainly subject to the anti-fraud provisions of the 1934 Act, commodities futures contracts contemplate the sale of tangible goods with which the 1934 Act has no connection.

In seeking to show that neither party considered the transaction an actual sale of securities, defendant relies heavily on judicial statements that acceptance of delivery of the asset underlying a futures contract is a rare occurrence. *See Leist v. Simplot*, 638 F.2d 283, 286 (2d Cir. 1980); *cert. granted sub nom. New York Mercantile Exchange v. Leist*, 450 U.S. 910, 101 S.Ct. 1346, 67 L.Ed.2d 332 (U.S.1981); *Curran v. Merrill Lynch, Pierce, Fenner & Smith*, 622 F.2d 216, 220 (6th Cir. 1980), *cert. granted*, 451 U.S. 906, 101 S.Ct. 1971, 68 L.Ed.2d 293 (1981). Even assuming that purchasers of interest rate futures contracts infrequently take delivery of the underlying securities, such contracts are nevertheless agreements to purchase securities. Moreover, defendant's position that acceptance of delivery is rare concedes, implicitly, that delivery is an option available to the contract purchaser.

■ In *P & C Investment Club v. Becker*, 520 F.Supp. 120 (E.D.Pa.1981), Judge Ditter concluded that the plaintiff there could not recover for fraud in the sale of interest-rate futures contracts based on his finding that an interest-rate futures contract did not qualify as an "investment contract," [4] as defined by the Supreme Court in *SEC v. W. J. Howey*, 328 U.S. 293, 301, 66 S.Ct. 1100, 1104, 90 L.Ed. 1244 (1946), as a "scheme [which] involves an investment of money in a common enterprise with profits to come solely from the efforts of others." I respectfully disagree. Because section 3(a), 15 U.S.C. § 78c(a), states that the terms "purchase" and "sell" refer also to *contracts* to purchase and sell, it suffices that the interest-rate futures contract is a contract for the sale of the underlying security. It is not necessary that the contract itself qualify as a security.

This analysis and conclusion accord with the holding in *Paine, Webber, Jackson & Curtis, Inc. v. Conaway*, 515 F.Supp. 202

(N.D.Ala.1981). There, the court held that fraud in the sale of Treasury bill futures contracts is cognizable under Rule 10b–5 of the Securities Exchange Commission, 17 C.F.R. § 240–10b–5 (1980). After observing that commodities futures contracts are not securities, the court reasoned that

> the fact that the underlying commodity in these cases was a treasury bill, itself a security, makes a difference as to the alleged Rule 10b–5 violation. Since Rule 10b–5 prohibits fraud and misrepresentation "... in connection with the purchase or sale of any security," 17 C.F.R. § 240.-10b–5 (1980), it is clear that a contract which provides for the delivery of a security at a future date falls within the ambit of Rule 10b–5. It is not essential ... that full title pass to a transferee for the transaction to be an 'offer' or a 'sale.' " *Rubin v. United States*, 449 U.S. 424, 430, 101 S.Ct. 698, 701, 66 L.Ed.2d 633 (1981).

*Id.* at 210 (footnotes omitted).

In view of this court's conclusion that an interest-rate futures contract is a contract to purchase a security, fraudulent misconduct on the part of the seller or his agent may be redressed under the 1934 Act. Accordingly, defendant DWR's motion to dismiss plaintiff's security claims is denied.

---

**4.** Section 3(a)(10), 15 U.S.C. § 78c(a)(10), which defines "security," lists an "investment contract" as one of a number of qualifying financial arrangements. *See* note 3 *supra*.